UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JERRY J. GARCIA,                    ) | |
|     *Plaintiff*,                         ) | |
|     *vs.*                                    ) | |
|                                                ) | No. 1:12-cv-01631-JMS-MJD |
| CEVA FREIGHT, LLC, CEVA LOGISTICS U.S., ) | |
| INC., and KEN THOMAS,        ) | |
|     *Defendants*.                     ) | |

## ORDER

Presently pending before the Court is Defendants CEVA Freight, LLC, CEVA Logistics U.S., Inc., and Ken Thomas' (collectively, "CEVA") Motion for Summary Judgment, [dkt. 44], and Plaintiff Jerry Garcia's Motion for Oral Argument, [dkt. 50]. For the reasons that follow, the Court grants CEVA's Motion for Summary Judgment on Mr. Garcia's claims for tortious interference with contractual relations and defamation. The parties briefs afforded the Court an adequate basis on which to rule without the assistance of oral argument. The Court therefore **DENIES** Mr. Garcia's Motion for Oral Argument, [dkt. 50].

### I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affi-

davits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

### A. Evidentiary Objections

As the standard of review only permits consideration of admissible evidence, the Court begins by considering CEVA's contentions that certain evidence on which Mr. Garcia relies is

inadmissible. Although CEVA argues that much of Mr. Garcia's evidence is inadmissible, the Court concludes that most of the challenged evidence is irrelevant to deciding the Motion for Summary Judgment. Therefore, the Court addresses only the evidence relevant to the ultimate decision.

Mr. Garcia asserts that CEVA knew that it was Dennis Little Trucking, Inc.'s ("Dennis Little Trucking") only client. [Dkt. 48 at 6.] In support of this assertion, Mr. Garcia relies solely on the affidavit of Dennis Little, the owner of Dennis Little Trucking, who states that "CEVA knew Dennis Little Trucking labored solely for CEVA." [Dkt. 48-2 at 2.] CEVA contends that this evidence is inadmissible because Mr. Little failed "to provide any factual basis which would tend to show he had personal knowledge of what *defendants knew*." [Dkt. 52 at 7 (emphasis in original).]

As set forth above, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1); *see Juarez v. Menard, Inc.*, 366 F.3d 479, 484 n.4 (7th Cir. 2004). Relatedly, the Rules of Evidence also require witness testimony to be based on personal knowledge. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). "[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)).

As CEVA correctly points out, there is no evidence in the record that Mr. Little had personal knowledge regarding CEVA's knowledge of Dennis Little Trucking's clientele. [Dkt. 52 at 7-8.] Mr. Little's conclusory assertion that "CEVA knew Dennis Little Trucking labored solely for CEVA," [dkt. 48-2 at 2], is insufficient without further evidence that Mr. Little had personal knowledge to this effect. *See Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988) ("[The plaintiff's] conclusory assertion, unsubstantiated with any specific facts, fails to indicate any factual basis which would tend to show that he had personal knowledge of the matter [as required by Federal Rule of Evidence 602]."). Nor does Mr. Little's affidavit provide any observations or first-hand-personal experiences from which he could infer CEVA's knowledge regarding Dennis Little Trucking's clients. Accordingly, Mr. Little's statement regarding CEVA's knowledge is inadmissible and may not be used by Mr. Garcia to survive summary judgment. *See Payne*, 337 F.3d at 772.

### B. Factual Background

The following factual background is drawn from the admissible evidence presented by the parties. The facts presented are those that are undisputed or, if disputed, are set forth in the light most favorable to the non-movant, Mr. Garcia. In instances where Mr. Garcia's deposition testimony conflicts with the statements he made in his affidavit, the Court relies solely on Mr. Garcia's deposition. *See Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006) ("[W]here a deposition and an affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken.") (citations and quotation marks omitted).

CEVA is a transportation and logistics company. [Dkt. 46-2 at 2.] It utilizes its own employees as well as independent contractors to transport freight for its customers. [*Id.*] Dennis

Little Trucking, which was owned by Dennis Little, was one such independent contractor that transported freight for CEVA. [Dkts. 46-7 at 4; 48-2 at 1.] Mr. Garcia was an independent contractor driver for Dennis Little Trucking and, as such, would haul CEVA freight. [Dkts. 46-7 at 3; 48-2 at 1.] CEVA paid its employee drivers an hourly rate "not just for the time they spend actually servicing loads for customers but for all time spent on the clock," while "independent contractor drivers" such as Mr. Garcia "are not paid by the hour but are instead only paid for loads they actually service." [Dkt. 46-2 at 2-3.]

According to Mr. Garcia, on the afternoon of February 22, 2011, he was contacted by CEVA Dispatcher John Twyman and instructed to "cover the schedule" for CEVA Driver Larry Mays because Mr. Mays' truck had broken down. [Dkts. 46-7 at 11; 48-1 at 1.] Mr. Garcia acknowledged, however, that Mr. Twyman never instructed him to transport a particular load; he was simply asked to cover Mr. Mays' schedule. [Dkt. 46-7 at 11.] According to Mr. Twyman, later that day he assigned a specific run to CEVA driver John Myers—namely, a return from HP to CEVA (the "HP Return"). [Dkt. 46-8 at 3.]

At around 10:30 p.m. that same evening, Mr. Garcia arrived at the Plainfield CEVA station. [Dkts. 46-7 at 13; 48-1 at 2.] Mr. Garcia entered the station and asked the CEVA employees, "Who has the paperwork for the HP returns?" [Dkt. 46-7 at 13.] CEVA Dispatcher Bill Baker "got up from his desk and handed [the paperwork to Mr. Garcia]. And he dispatched [Mr. Garcia] to take the load to HP." [*Id.*] As Mr. Garcia was leaving the building with the paperwork, Mr. Myers was walking in the building and stated to Mr. Garcia, "You might as well just drop the trailer right there because I'm supposed to deliver it." [*Id.* at 15] A verbal altercation ensued between Mr. Garcia and Mr. Myers regarding who had the authority to perform the HP Return. [*Id.* at 15-17.] Although Mr. Garcia attempted to contact his supervisor, CEVA em-

ployee Lorra Scott, he was unable to reach her. [*Id.* at 20.] Without discussing the situation with any other CEVA employees, Mr. Garcia left the CEVA station and performed the HP Return. [*Id.* at 21.] In his view, he was dispatched by Mr. Twyman and Mr. Baker to perform the HP Return, and Mr. Myers lacked the authority to instruct him otherwise. [Dkt. 48-1 at 2.]

The next day, February 23, Mr. Myers informed CEVA of the incident between him and Mr. Garcia regarding the HP Return (the "HP Return Incident"). [Dkt. 46-2 at 3.] Ms. Scott called Mr. Garcia and asked him to drive to CEVA's Plainfield station. [Dkt. 46-7 at 26.] Upon arrival, Ken Thomas, the Senior Manager of CEVA's Plainfield station, confiscated Mr. Garcia's identification card and prevented him from entering CEVA property pending investigation of the HP Return Incident. [*Id.* at 26-29.] At some point that day, CEVA's Contracted Services Coordinator, Sam Blackburn, took statements regarding the incident from Mr. Myers and Mr. Garcia. [Dkt. 46-2 at 3.] Also that day, a teleconference involving Mr. Thomas, Mr. Blackburn, Ms. Scott, and Mr. Little was held to investigate the HP Return Incident. [*Id.*] At the end of the teleconference, Mr. Thomas stated that Mr. Garcia should have listened to Mr. Myers, that Mr. Garcia was not authorized to perform the HP Return, and that Mr. Garcia's actions caused CEVA to lose revenue. [Dkt. 46-7 at 43.]

On March 2, 2011, CEVA issued what it called a "Business Discussion" letter to Dennis Little Trucking. [Dkt. 46-4 at 2.] The Business Discussion stated that, because of the HP Return Incident and CEVA's conclusion that Mr. Garcia delivered an unauthorized load, "the services of Jerry Garcia are no longer needed . . . at CEVA." [*Id.* at 3.] Furthermore, the Business Discussion stated that CEVA's decision with respect to Mr. Garcia "does not mean that CEVA has terminated his employment with [Dennis Little Trucking]." [*Id.*] Nevertheless, that same day, Dennis Little Trucking terminated its employment relationship with Mr. Garcia by way of an

"Employment Separation." [Dkt. at 46-12 at 2.] The Employment Separation stated that Dennis Little Trucking "is solely contracted to haul freight for CEVA" and that CEVA no longer permitted Mr. Garcia to haul CEVA freight. [*Id.*] Thus, "[d]ue to a lack of work," Dennis Little Trucking terminated its employment relationship with Mr. Garcia. [*Id.*]

Mr. Garcia brought the instant suit in state court asserting claims for tortious interference with contractual relations and defamation. [Dkt. 4-1 at 2-5.] After CEVA removed the case to this Court, [dkt. 4], it filed the instant Motion for Summary Judgment, asserting that Mr. Garcia could not produce sufficient evidence supporting either of his claims. [Dkt. 44.]

## III.
### DISCUSSION

CEVA moves for summary judgment on Mr. Garcia's tortious interference with contractual relations and defamation claims. The Court addresses each claim in turn.

### A.   Tortious Interference with Contractual Relations

Mr. Garcia maintains that CEVA tortuously interfered with his contractual employment relationship with Dennis Little Trucking. To succeed on a claim for tortious interference with contractual relations under Indiana law,[1] Mr. Garcia must prove five elements: "1) the existence of a valid and enforceable contract, 2) defendant's knowledge of the contract's existence, 3) defendant's intentional inducement of breach of the contract, 4) the absence of justification, and 5) damages resulting from defendant's wrongful inducement of the breach." *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003) (quoting *Keith v. Mendus*, 661 N.E.2d 26, 36 (Ind. App. 1996)); *see Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994) (identifying the same five elements). CEVA argues that Mr. Garcia cannot succeed on his claim because he lacks evi-

---

[1] The parties do not dispute that Indiana law governs Mr. Garcia's claims, and therefore the Court will apply Indiana law. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991).

dence establishing the third and fourth elements—that is, he cannot show that CEVA intentionally induced the breach of Mr. Garcia's contract with Dennis Little Trucking or that there was an absence of justification for CEVA's conduct. [Dkt. 45 at 9-13.] Mr. Garcia disagrees, contending that he adduced sufficient evidence to prove both of these elements. [Dkt. 48 at 6-7.] The Court addresses each of the two contested elements in turn.

### *1. Intentional Inducement of Breach*

CEVA argues that Mr. Garcia cannot show that CEVA intentionally induced Dennis Little Trucking to breach its employment contract with Mr. Garcia. [Dkt. 45 at 9.] Specifically, CEVA contends that both the Business Discussion and the Employment Separation affirmatively establish that CEVA did not "instruct Dennis Little Trucking to end its relationship with [Mr.] Garcia, let alone induce a breach of any agreement." [*Id.* at 10.] In response, Mr. Garcia argues that CEVA knew that it was Dennis Little Trucking's only client and therefore knew that preventing Mr. Garcia from performing further work for CEVA would require Dennis Little Trucking to terminate its employment contract with Mr. Garcia. [Dkt. 48 at 6-7.] CEVA replies that the sole evidence on which Mr. Garcia relies to prove CEVA's knowledge, Mr. Little's affidavit, is inadmissible because Mr. Little lacked personal knowledge regarding CEVA's knowledge of Dennis Little Trucking's clients. [Dkt. 52 at 7.] Moreover, CEVA argues that even if it knew that its actions would cause Dennis Little Trucking to terminate Mr. Garcia's employment, such knowledge is insufficient to establish the intentional inducement of breach element. [*Id.* at 8-10.]

The Court agrees with CEVA that Mr. Garcia has not presented admissible evidence sufficient to establish that CEVA intentionally induced Dennis Little Trucking to breach its em-

ployment contract with Mr. Garcia.[2] First, the only evidence to which Mr. Garcia points in support of his position that CEVA knew its action would result in the termination of Mr. Garcia's employment by Dennis Little Trucking is Mr. Little's affidavit statement to this effect. [Dkt. 48 at 6 (citing dkt. 48-2 at 2).] As discussed above, there is no factual basis establishing that Mr. Little has personal knowledge regarding CEVA's knowledge, and therefore this evidence is inadmissible. *See Payne*, 337 F.3d at 772; *Davis*, 841 F.2d at 189. Because Mr. Garcia's sole evidence is inadmissible, he cannot establish the intentional inducement element of his tortious interference claim and summary judgment in favor of CEVA on this claim is warranted.

But the Court need not rest its decision solely on the inadmissibility of Mr. Garcia's evidence. Even considering Mr. Little's affidavit statement, CEVA is correct that knowledge that its action would inevitably lead to Dennis Little Trucking breaching its contract with Mr. Garcia is insufficient to establish *intentional* inducement. *See R.E. Davis Chemical Corp. v. Diasonics, Inc.,* 826 F.2d 678, 687 (7th Cir. 1987) ("The element of 'inducement' in the context of a claim for intentional interference with contractual relations requires more than the knowledge that one's conduct is substantially certain to result in one party breaking its contract with another."); *see also DSM Desotech, Inc. v. 3D Sys. Corp.*, 2013 WL 214677, *3 (N.D. Ill. 2013); *Pampered Chef v. Alexanian*, 804 F.Supp.2d 765, 802 (N.D. Ill. 2011). Here, like in *Diasonics*, even if CEVA knew that its action would almost certainly lead to Dennis Little Trucking terminating Mr. Garcia's employment, there is no evidence that CEVA "in any way desired that [Dennis Little Trucking] breach its contract with [Mr. Garcia]." *Diasonics*, 826 F.3d at 687. Indeed, the

---

[2] CEVA is also correct that there is no "admissible evidence that [Mr. Garcia's] contract with Dennis Little Trucking has been breached at all." [Dkt. 52 at 7.] In fact, neither party points to evidence of a contract between Mr. Garcia and Dennis Little Trucking at all. Because the Court concludes that, even if there was a contract and it was breached that Mr. Garcia's tortious interference claim would fail, the Court need not rest its decision on this ground.

Business Discussion explicitly states that CEVA's action did not alter Mr. Garcia's employment status with Dennis Little Trucking, [dkt. 46-4 at 3], and there is no evidence suggesting that CEVA's wishes were to the contrary.

The Court recognizes that the Seventh Circuit in *Diasonics* was applying Illinois, rather than Indiana, law. But, as CEVA contends, it is likely that the Indiana Supreme Court would reach the same result under Indiana law. [Dkt. 52 at 7 n.3.] First, the Seventh Circuit arrived at its holding in *Diasonics* via substantial reliance on the Restatement (Second) of Torts § 767. *See Diasonics*, 826 F.2d at 686. The Indiana Supreme Court also relies on § 767 of the Restatement in deciding tortious interference claims, *see, e.g.*, *Winkler*, 638 N.E.2d at 1235, lending credence to CEVA's position that it would do so if faced with the question in *Diasonics* and the one here, [dkt. 52 at 10 n.3]. Second, the Seventh Circuit recognized in *Diasonics* that "courts in only a few jurisdictions" have addressed whether knowledge is sufficient to establish an *intentional* inducement, "and they have concluded that something more [than knowledge that a breach will occur] is needed . . . to hold a party liable for intentional interference with contractual relations." *Diasonics*, 826 F.2d at 686. This too supports CEVA's position that the same result would be reached under Indiana law.

Accordingly, for either of the two reasons set forth above, the evidence on which Mr. Garcia relies is insufficient to establish the intentional inducement element of his tortious interference claim. For this reason alone, summary judgment in favor of CEVA is warranted on Mr. Garcia' tortious interference claim.

    2.  *Absence of Justification*

The parties also dispute whether Mr. Garcia has presented sufficient evidence regarding the absence of justification element of his tortious interference claim. In the end, the Court

agrees with CEVA that he has not and thus details this alternative basis for summary judgment on Mr. Garcia's tortious interference claim.

CEVA sets forth several business justifications for precluding Mr. Garcia from performing any more work for CEVA, including its desire to control who services its customers, preventing future altercations in the workplace, maintaining a professional atmosphere in the workplace, and increasing profits by ensuring that hourly employees like Mr. Myers—who are paid regardless of whether they are transporting loads—remain busy, since contractors such as Mr. Garcia are paid per load transported. [Dkt. 45 at 12.] In response, Mr. Garcia ignores CEVA's justifications and instead asserts that CEVA based its decision on the false premise that Mr. Garcia "had moved freight without being properly dispatched." [Dkt. 48 at 7.] CEVA replies that Mr. Garcia failed to address, let alone undermine, its asserted business justifications, and that, even if it ultimately turned out to be true that Mr. Garcia was authorized to perform the HP Return—making its decision with respect to Mr. Garcia predicated on a false factual premise—it was acting pursuant to a legitimate business concern. [Dkt. 52 at 11-12.]

In order to show the absence of justification, Mr. Garcia must establish that CEVA "acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to [his] injury and damage . . . . The existence of a legitimate reason for [CEVA's] actions provides the necessary justification to avoid liability." *Sublet v. Larue,* 2013 WL 1296438, *4 (S.D. Ind. 2013) (quoting *Haegert v. McMullan*, 953 N.E.2d 1223, 1234 (Ind. App. 2011)) (quotation marks omitted). In determining whether an action is justified, the Court may consider a number of factors, including: "(a) the nature of the defendant's conduct; (b) the defendant's motive; (c) the interests of the plaintiff with which the defendant's conduct interferes; (d) the interests sought to be advanced by the defendant; (e) the social interests in protecting the freedom

of action of the defendant and the contractual interests of the plaintiff; (f) the proximity or remoteness of the defendant's conduct to the interference; and (g) the relations between the parties." *Haegert*, 953 N.E.2d at 1234 (quoting *Winkler*, 638 N.E.2d at 1235). "Although the weight to be given each consideration may differ from case to case, the central question to be answered is whether the defendant's conduct has been fair and reasonable under the circumstances." *Id.*

The Court agrees with CEVA that Mr. Garcia has failed to carry his burden of establishing an absence of justification on CEVA's part. First, Mr. Garcia's position that CEVA lacked justification because the basis for its action—that Mr. Garcia hauled an unauthorized load—was false, is misguided. Evidence that a company took an action based on a false factual premise, without more, does not show that it was not acting pursuant to a legitimate business purpose. *See Francis v. Power Plant Maintenance, Inc.*, 264 F.Supp.2d 350, 356 (M.D.N.C. 2003) ("[Defendant's] investigations found that Plaintiff had made . . . disruptive statements [in the workplace]. *Whether correct or not*, [Defendant's] investigatory results and its concern about the disruption in its [workplace] are legitimate business reasons for requesting [the Plaintiff's employer to] remove Plaintiff.") (emphasis added). Simply put, whether or not Mr. Garcia was authorized by another CEVA employee to perform the HP Return, in acting as it did, CEVA ultimately was of the view that Mr. Garcia hauled an unauthorized load. Thus, it acted as it did for the legitimate business purpose of preventing Mr. Garcia from transporting unauthorized loads in the future.

The Court could envision a case where Mr. Garcia's argument might carry more weight. For example, if the evidence would allow a reasonable jury to conclude that a company "malicious[ly]" and "intentionally" fabricated a reason to cut ties with a contractor such as Mr. Garcia

for the "exclusive[]" purpose of injuring Mr. Garcia, he might be able to establish an absence of justification. *Haegert*, 953 N.E.2d at 1235. But this is not such a case. The evidence, viewed in the light most favorable to Mr. Garcia, shows at most that Mr. Garcia thought he was authorized to conduct the HP Return, while CEVA concluded otherwise. [Dkts. 46-2 at 3; 48-1 at 2.] This is not, as is required, evidence that CEVA's conduct was "exclusively directed to [Mr. Garcia's] injury." *Haegert*, 953 N.E.2d at 1235 (citation omitted); *see Winkler*, 638 N.E.2d at 1236 (holding that the absence of justification element was not met because, among other things, the plaintiff did "not suggest that defendants' motive was a willful or spiteful intent to injure him"). Whether or not CEVA correctly understood the relevant factual circumstances, the evidence demonstrates that CEVA acted pursuant to what it believed to be its legitimate business interests and that is all that is required to foreclose Mr. Garcia's claim. *See Haegert*, 953 N.E.2d at 1234.

Second, even assuming CEVA's justification that Mr. Garcia took an unauthorized load was false and thus illegitimate, Mr. Garcia simply ignores CEVA's other justifications. As CEVA explains, it has an economic interest in having Mr. Myers, who is an hourly employee that must be paid regardless of whether he is hauling loads, be given hauling priority over Mr. Garcia, who was a contractor that was paid only for the freight transported. [Dkts. 45 at 12; 46-2 2-3.] The undisputed evidence is that Mr. Garcia performed the HP Return when Mr. Myers was available to do so. [Dkt. 46-7 at 21.] Avoiding this situation in the future increases CEVA's profits, as it ensures that CEVA is not unnecessarily paying contractors for work that could be completed be CEVA employees. This asserted economic justification is ignored by Mr. Garcia

and certainly constitutes a legitimate business justification.[3] *See Winkler*, 638 N.E.2d at 1236 (recognizing that action seeking to improve a business's "financial footing" constitutes a legitimate business justification); *see also Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 252 (Mo. 2006) (holding the absence of justification element was not met because the defendant "had an economic interest in controlling who worked on its projects"). And "[t]he existence of a legitimate reason for [CEVA's] actions provides the necessary justification to avoid liability." *Haegert*, 953 N.E.2d at 1235.

Accordingly, for either of the foregoing reasons, Mr. Garcia cannot establish the absence of justification element of his tortious interference claim. Mr. Garcia's failure to adduce evidence supporting either of two necessary elements of his tortious interference claim leads to summary judgment in CEVA's favor.

**B.     Defamation**

The Court begins by addressing which allegedly defamatory statements are at issue. In his deposition, Mr. Garcia identified three statements that he believed to be defamatory: (1) Mr. Thomas' statement that, "Since [Mr. Garcia] did not follow the instructions of CEVA driver John Myers on the HP returns, [Mr. Garcia] took an unauthorized load and took revenue away from the company"; (2) Ms. Scott's statement that Mr. Garcia was a "troublemaker"; and (3) CEVA employee Matt Long's statement that Mr. Garcia was a "bad influence." [Dkt. 46-7 at 32.] Even though these specific statements were not identified in Mr. Garcia's Complaint, CEVA moves

---

[3] The Court also notes that Mr. Garcia failed to contest CEVA's other asserted justifications regarding its interest in maintaining a professional workplace and a conflict-free working environment. [Dkt. 45 at 12.] Preventing Mr. Garcia from contributing to disharmony at CEVA's workplace is yet another legitimate justification for CEVA's actions and precludes Mr. Garcia from succeeding on his tortious interference claim. *See Francis*, 264 F.Supp.2d at 355 (holding that the defendant business had "a legitimate concern with maintaining a professional and collegial atmosphere among the employees").

for summary judgment on Mr. Garcia's defamation claims predicated on all three statements. [Dkt. 45 at 13-19.]  In response, Mr. Garcia defends his defamation claim only as to Mr. Thomas' statement, ignoring Ms. Scott's and Mr. Long's statements.  [Dkt. 48 at 8-10.]  The Court considers this a concession that these statements cannot form the basis of a defamation claim and treats it as such.  *See Espinoza v. Northwestern Univ.*, 105 Fed. Appx. 113, 114 (7th Cir. 2004) ("[The plaintiff] effectively conceded [his] retaliation claim by failing to respond to [the defendant's] assertions that his job performance was unsatisfactory.").  But even if not a concession, Mr. Garcia fails to provide argument or point to evidence contravening CEVA's position regarding these two statements.  Thus, for either of these reasons, summary judgment in favor of CEVA is warranted on Mr. Garcia's defamation claims regarding Ms. Scott's and Mr. Long's statements.

This leaves Mr. Thomas' statement.  CEVA contends that summary judgment is proper because Mr. Thomas' statement is true and, even if not, the statement was an intracompany statement made during the course of a personnel investigation and is therefore protected by qualified privilege.  [Dkt. 45 at 16-19.]  Mr. Garcia disagrees, arguing that there is evidence that the statement was false and that the qualified privilege is inapplicable.  [Dkt. 48 at 8-10.]

"To establish a claim of defamation, a plaintiff must prove the existence of 'a communication with defamatory imputation, malice, publication, and damages.'"  *Trail v. Boys & Girls Club of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006) (quoting *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. App. 1999)).  "Any statement actionable for defamation must not only be defamatory in nature, but false." *Id.*

Qualified privilege is a defense to a defamation claim.  *See Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992).  It "applies to 'communications made in good faith on any subject matter

in which the party making the communication has an interest or in reference to which he has a duty . . . if made to a person having a corresponding interest or duty.'" *Id.* (quoting *Chambers v. Am. Trans Air, Inc.*, 577 N.E.2d 612, 615 (Ind. App. 1991)); *see Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 188 (Ind. 2010) (same). An example of a type of communication covered by the qualified privilege is "[i]ntracompany communication[] regarding the fitness of an employee." *Bals*, 600 N.E.2d at 1356. "Absent a factual dispute, whether a statement is protected by a qualified privilege is a question of law." *Id.* CEVA bears the burden of demonstrating that the qualified privilege defense applies, but "[o]nce the communication is established as qualifiedly privileged, [Mr. Garcia] then has the burden of overcoming that privilege by showing that it has been abused." *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 262 (Ind. 1994). As relevant here, Mr. Garcia can demonstrate abuse of the privilege by showing that "the statement was made without belief or grounds for belief in its truth." *Id.* Because the Court concludes that the qualified privilege applies to Mr. Thomas' statement and that the privilege was not abused, the Court need not discuss the parties' dispute regarding whether his statement was false.

The undisputed evidence demonstrates that the qualified privilege applies, and Mr. Garcia does not argue otherwise. According to Mr. Garcia's deposition testimony, Mr. Thomas made the statement at issue after Mr. Garcia was banned from CEVA property pending "investigation" of the HP Return Incident. [Dkt. 46-7 at 31.] Specifically, the statement was made during the February 23 teleconference involving Mr. Little, Ms. Scott, Mr. Blackburn, and Mr. Thomas, [*id.* at 32-33], the sole purpose of which was to investigate the HP Return Incident, [*id.* at 37, 39; *see also id.* at 42-43]. Simply put, Mr. Thomas made the statement concerning Mr. Garcia's performance to other CEVA officials and Mr. Garcia's boss, Mr. Little, during the course of an investigatory meeting regarding a work-related incident involving Mr. Garcia. Mr.

Thomas, as CEVA's Director of Operations, certainly has an "interest" in the conduct of contractors working for CEVA, and he made the statement to others who had a "corresponding interest" in Mr. Garcia's conduct—namely, other CEVA officials and Mr. Garcia's boss, Mr. Little. *Dugan*, 929 N.E.2d at 188; *Bals*, 600 N.E.2d at 1356. Such a statement falls within the qualified privilege as an "[i]ntracompany communications regarding the fitness of an employee."[4] *Bals*, 600 N.E.2d at 1356; *see Schrader*, 639 N.E.2d at 262. But as previously stated, even if the evidence on this score was equivocal, Mr. Garcia did not contest whether CEVA carried its initial burden to show that the qualified privilege applies. [Dkt. 48 at 9.] Again, this is essentially a concession that CEVA met its initial burden. *See Espinoza*, 105 Fed. Appx. at 114.

Mr. Garcia does, however, contend that he presented sufficient evidence that the qualified privilege was abused. [*Id.*] Specifically he argues that Mr. Thomas made the statement regarding Mr. Garcia "without belief or grounds for belief in its truth." [Dkt. 48 at 9.] To establish this, Mr. Garcia points only to his deposition testimony regarding the timing of Mr. Thomas's statement, asserting that the statement was made "only hours after [Mr.] Garcia had delivered the HP Returns." [*Id.* (citing dkt. 46-7 at 32-33).] Solely from the evidence regarding the timing of the statement, Mr. Garcia extrapolates that Mr. Thomas made the statement without having "had an opportunity to conduct an investigation or to speak to [Mr.] Garcia" and thus "made severe allegations about [Mr.] Garcia's conduct without first gathering evidence to obtain grounds for such a statement." [*Id.* at 9-10.]

---

[4] The Court recognizes that the statement was not strictly an "intracompany communication" given that the meeting involved Mr. Little of Dennis Little Trucking, and the statement concerned the "fitness" of a contractor rather than an "employee." *Bals*, 600 N.E.2d at 1356. But the principle animating the privileging of intracompany communications regarding an employee's fitness—"to accommodate the important role of free and open intracompany communications and legitimate human resource management needs"—has equal force when the employee is a contractor and the conversation involves the contractor's boss. *Schrader*, 639 N.E.2d at 262. Notably, Mr. Garcia does not argued otherwise.

CEVA is correct that Mr. Garcia's position lacks merit. [Dkt. 52 at 16-19.] Mr. Garcia's deposition testimony regarding when Mr. Thomas made the allegedly defamatory statement is insufficient for a reasonable jury to infer that Mr. Thomas made the statement without grounds for belief in its truth. *See Bals*, 600 N.E.2d at 1356 n.4 (noting that the qualified privilege should be given a "broad latitude," and thus to be abused the plaintiff must demonstrate something beyond a reckless disregard for the statement's truth). Several hours are more than sufficient time for Mr. Thomas to investigate the altercation and form a reasonable basis to reach the conclusion he did. *Cf. Olsson v. Ind. Univ. Bd. of Trustees*, 571 N.E.2d 585, 589 (Ind. App. 1991) ("While [the plaintiff] may dispute [her supervisor's] ability to form an accurate opinion after only three classroom visits, she presented no material facts from which a trier of fact could reasonably infer reckless disregard for the truth, falsity of the letter, or malice."). Indeed, even according to Mr. Garcia's version of events, Mr. Thomas made the statement "at the end" of the February 23 teleconference, the entire purpose of which was to investigate the incident. [Dkt. 46-7 at 43.]

To be sure, there is no evidence that Mr. Thomas conducted a thorough investigation before making the statement at issue. However, it is Mr. Garcia's burden to prove that Mr. Thomas made the statement without grounds for belief in its truth. *See Bals*, 600 N.E.2d at 1356. Mr. Garcia has not carried his burden of doing so. The timing evidence alone is insufficient because there is no additional evidence regarding whether and to what extent Mr. Thomas spent those hours investigating the HP Return Incident. Stated differently, it is not reasonable to infer that Mr. Thomas did not have a factual basis for his statement only because it was made a few hours after the incident, and this is doubly true given that the statement was made at the end of an investigatory meeting regarding the very incident that Mr. Thomas' statement concerns. Accordingly, because Mr. Garcia does not dispute that the qualified privilege covered Mr. Thomas'

statement and did not carry his burden of showing that the privilege was abused, CEVA is entitled to summary judgment on Mr. Garcia's defamation claim.

## IV.
## CONCLUSION

For the reasons explained, CEVA's Motion for Summary Judgment is **GRANTED**, and Mr. Garcia's Motion for Oral Argument is **DENIED**. Judgment will issue accordingly.

12/04/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF:**

Gregory W. Black
gwblack.blacklaw@sbcglobal.net

Fred L. Cline
FRED L. CLINE, ATTORNEY AT LAW
fred@fredclinelaw.com

Alvin Jackson Finklea, III
SCOPELITIS GARVIN LIGHT & HANSON
jfinklea@scopelitis.com

Ryan Wayne Wright
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
rwright@scopelitis.com